**IMG-175**                                                                 **NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-1028
_____

MOUSSA MAHAMAN,
                                                          Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES OF AMERICA,
                                        Respondent
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A097-699-840)
Immigration Judge:  Honorable Charles Honeyman
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
August 3, 2011
Before:  FUENTES, VANASKIE AND ROTH, <u>Circuit</u> <u>Judges</u>

(Opinion filed: August 22, 2011 )
_____

OPINION
_____

PER CURIAM

Moussa Mahaman petitions for review of a final order of the Board of

Immigration Appeals (BIA) denying his motion to reopen proceedings.  For the reasons

discussed below, we will deny the petition for review.

Mahaman, a citizen of Niger, was admitted to the United States on a two-week

visa in August 2003, and stayed beyond that period without authorization. In July 2006, the Department of Homeland Security initiated removal proceedings against him, contending that he was removable as a nonimmigrant who had overstayed his visa. See 8 U.S.C. § 1227(a)(1)(B). An Immigration Judge (IJ) concluded that Mahaman was removable as charged, and he did not seek asylum, withholding of removal, or relief under the Convention Against Torture (CAT). The IJ granted Mahaman voluntary departure, ordering that he leave by May 8, 2008.

Notwithstanding this order, Mahaman did not depart. On June 15, 2010, he filed a motion to reopen with the IJ. He claimed that as a result of a military coup in Niger, in which President Tandja had been overthrown, it was no longer safe for him to return. More specifically, he alleged that he had written a song in 1999 protesting a previous military coup, and because the same military officials who were involved in the 1999 coup had also led the 2010 coup, he would be in danger in Niger.[1] He therefore sought asylum, withholding of removal, and CAT relief.

The IJ denied Mahaman's motion to reopen, concluding that he "ha[d] not submitted material and relevant evidence regarding changed conditions that establish prima facie eligibility for asylum." Mahaman appealed to the BIA, which dismissed the appeal. The BIA first set forth the legal standards. The BIA explained that while motions to reopen typically must be filed within 90 days of the final order of removal, the

---

[1] In this song, Mahaman stated that the assassins hated the president and did not want development, but emphasized, "We are not accusing any one. We are just telling

time limitation does not apply to motions that rely on evidence of "changed country conditions." 8 U.S.C. § 1229a(c)(7)(C)(ii). Such a motion must be based on "evidence [that] is material and was not available and would not have been discovered or presented at the previous proceeding." Id. Moreover, the new evidence, coupled with the previous evidence of record, must establish the alien's prima facie eligibility for relief. See Shardar v. Att'y Gen., 503 F.3d 308, 313 (3d Cir. 2007).

Because Mahaman filed his motion to reopen well more than 90 days after the final order, he could proceed only (as relevant here) by showing changed country conditions. The BIA agreed with Mahaman that circumstances in Niger had changed, because the former president had been deposed. However, the BIA concluded that Mahaman had failed to show that the coup "create[d] a material change in his own circumstances," because, beyond some speculative, conclusory statements, Mahaman had presented no evidence to support his claim that he was in any greater danger after the coup than he had been at any time since he left Niger in 2003 (which was already four years after he had released his song). For similar reasons, the BIA also concluded that Mahaman had failed to make a prima facie case that he was eligible for relief. Therefore, the BIA dismissed the appeal. Mahaman then filed a timely petition for review in this Court.

Our standard of review over Mahaman's petition for review is narrow: we review the agency's denial of a motion to reopen for abuse of discretion. See Borges v.

---

the truth."

3

Gonzales, 402 F.3d 398, 404 (3d Cir. 2005). The agency's decision is entitled to "broad deference," Ezeagwuna v. Ashcroft, 325 F.3d 396, 409 (3d Cir. 2003) (internal quotation marks omitted), and it "will not be disturbed unless [it is] found to be arbitrary, irrational, or contrary to law," Guo v. Ashcroft, 386 F.3d 556, 562 (3d Cir. 2004) (internal quotation marks omitted). As the Supreme Court has noted, "[g]ranting such motions too freely will permit endless delay of deportation by aliens creative and fertile enough to continuously produce new and material facts sufficient to establish a prima facie case." INS v. Abudu, 485 U.S. 94, 108 (1988) (internal quotation marks omitted).

We discern no abuse of discretion in this case. In considering motions to reopen, "[t]he critical question is . . . whether circumstances have changed sufficiently that a petitioner who previously did not have a legitimate claim for asylum now has a well-founded fear of future persecution." Malty v. Ashcroft, 381 F.3d 942, 945 (9th Cir. 2004); cf. In re Coelho, 20 I. & N. Dec. 464, 473 (BIA 1992) (considering whether "the new evidence offered would likely change the result in the case"). Here, Mahaman has failed altogether to show that the military coup affects his eligibility for relief. The newspaper articles that he has presented state that members of the military overthrew the former president after he dissolved Niger's Parliament and Constitutional Court and announced his plans to hold power indefinitely, and that they acted for the purpose of restoring democracy. Mahaman has presented no evidence to show that the leaders of the coup have repressed free speech or retaliated against critics at any time — after the 1999 coup, after the 2010 coup, or in the interim, when they remained in positions of authority

4

— or even that there is a basis to believe that they will do so in the future.  See Huang v. Att'y Gen., 620 F.3d 372, 391 (3d Cir. 2010); see also Mabikas v. INS, 358 F.3d 145, 148-49 (1st Cir. 2004).

Mahaman argues that the agency should have granted the motion to reopen based on a letter he presented from Jean Ouedraogo, a professor of foreign languages and literature.  However, as the BIA observed, the letter had serious limitations — Professor Ouedraogo acknowledged that he did not know Mahaman and lacked information about the specifics of his case, and did not express any firm conclusions as to whether Mahaman would in fact be persecuted or tortured if removed to Niger.  Accordingly, we conclude that the BIA did not abuse its discretion in concluding that this letter was neither material nor established that Mahaman was prima facie eligible for relief.  Cf. Shardar, 503 F.3d at 316 (concluding that agency erred by failing to credit an expert's affidavit that "provide[d] a detailed, cogent, and reasoned explanation why [the alien] would likely be the specific target of persecution"); see also Harchenko v. INS, 379 F.3d 405, 410 (6th Cir. 2004) (explaining that to support a motion to reopen, the alien cannot rely on "speculative conclusions").

Mahaman next claims that the BIA failed fully to consider the evidence that he proffered.  Again, we disagree.  The BIA need not "write an exegesis on every contention, but only . . . show that it has reviewed the record and grasped the [petitioner's] claims."  Sevoian v. Ashcroft, 290 F.3d 166, 178 (3d Cir. 2002) (internal quotation marks omitted).  The BIA here expressly discussed several pieces of evidence

5

that Mahaman presented, including the letter from Professor Ouedraogo, among other things.  Mahaman has not pointed to any evidence in the record that the BIA did not specifically address that was relevant to the flaws in his motion that the BIA identified.  Accordingly, we are satisfied that the BIA fully grasped his claims.  See, e.g., Thu v. Att'y Gen., 510 F.3d 405, 416 n.16 (3d Cir. 2007) ("Consideration of all evidence does not require comment on all evidence." (internal quotation marks omitted)).

Therefore, we will deny the petition for review.